UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JACK WOLF, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIVINT SOLAR, INC., DAVID BYWATER, DAVID F. D'ALESSANDRO, BRUCE MCEVOY, JAY D. PAULEY, TODD R. PEDERSEN, ELLEN S. SMITH, JOSEPH S. TIBBETTS, JR., PETER F. WALLACE, ALEX J. DUNN, SUNRUN INC., and VIKING MERGER SUB, INC., <br><br> Defendants. | Case No. _____ <br><br> JURY TRIAL DEMANDED <br><br> CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 6, 2020 (the "Proposed Transaction"), pursuant to which Vivint Solar, Inc. ("Vivint" or the "Company") will be acquired by Sunrun Inc. ("Parent") and Viking Merger Sub, Inc. ("Merger Sub," and together with Parent, "Sunrun").

2. On July 6, 2020, Vivint's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Sunrun. Pursuant to the terms of the Merger Agreement, Vivint's stockholders will receive 0.55 shares of Parent common stock for each share of Vivint common stock they own.

3. On August 14, 2020, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Vivint common stock.

9. Defendant Vivint is a Delaware corporation and maintains its principal executive offices at 1800 West Ashton Boulevard, Lehi, Utah 84043. Vivint's common stock is traded on the New York Stock Exchange under the ticker symbol "VSLR."

10. Defendant David Bywater is Chief Executive Officer and a director of the Company.

11. Defendant David F. D'Alessandro is a director of the Company.

12. Defendant Bruce McEvoy is a director of the Company.

13. Defendant Jay D. Pauley is a director of the Company.

14. Defendant Todd R. Pedersen is a director of the Company.

15. Defendant Ellen S. Smith is a director of the Company.

16. Defendant Joseph S. Tibbetts, Jr. is a director of the Company.

17. Defendant Peter F. Wallace is a director of the Company.

18. Defendant Alex J. Dunn is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

21. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Vivint (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of July 2, 2020, there were approximately 125,410,593 shares of Vivint common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29.     Vivint is a leading full-service residential solar provider in the United States.

30.     The Company designs and installs solar energy systems for homeowners and also offers monitoring and maintenance services.

31.     On July 6, 2020, Vivint's Board caused the Company to enter into the Merger Agreement with Sunrun.

32.     Pursuant to the terms of the Merger Agreement, Vivint's stockholders will receive 0.55 shares of Parent common stock for each share of Vivint common stock they own.

33.     According to the press release announcing the Proposed Transaction:

Sunrun (NASDAQ: RUN), a leading provider of residential solar, battery storage and energy services, and Vivint Solar (NYSE: VSLR), a leading full-service residential solar provider in the United States, today announced the companies have entered into a definitive agreement under which Sunrun will acquire Vivint Solar in an all-stock transaction, pursuant to which each share of Vivint Solar common stock will be exchanged for 0.55 shares of Sunrun common stock, representing a combined Enterprise Value of $9.2 billion based on the closing price of Sunrun's shares on July 6, 2020. Vivint Solar stockholders are expected to own approximately 36% and Sunrun stockholders are expected to own approximately 64% of the fully diluted shares of the combined company. The exchange ratio implies a 10% premium for Vivint Solar shares based on closing prices on July 6, 2020, and a 15% premium to the exchange ratio implied by the 90 day volume weighted average price of Vivint Solar and Sunrun shares. . . .

Transaction Details

Under the terms of the definitive transaction agreement, each share of Vivint Solar common stock issued and outstanding immediately prior to the effective time of the merger will be converted automatically into the right to receive 0.55 shares of Sunrun common stock.

The Board of Directors of Sunrun and Vivint Solar have each unanimously voted in favor of the definitive transaction agreement.

The acquisition of Vivint Solar is expected to be completed during the fourth quarter of 2020, subject to approval by Vivint Solar and Sunrun stockholders, regulatory approvals and other customary closing conditions.

Sunrun's Board of Directors will be expanded by adding 2 directors, one of which is expected to be Vivint Solar's CEO, David Bywater.

Support Agreements have been obtained from both companies' largest stockholders, 313 Acquisition LLC (Blackstone affiliate) and Tiger Global, to vote their respective shares in favor of the merger and the share issuance, respectively. In addition, 313 Acquisition LLC (Blackstone affiliate) has agreed to lock up 50% of shares obtained as a result of the acquisition for 60 days following closing and the remaining 50% for 120 days. Sales are allowed to occur during these periods subject to certain conditions.

Advisors

Credit Suisse Securities (USA) LLC is serving as the exclusive financial advisor to Sunrun and Cooley LLP and Axinn, Veltrop & Harkrider LLP are serving as legal counsel. Morgan Stanley & Co. LLC is serving as the lead financial advisor to Vivint Solar, BofA Securities, Inc. is serving as a financial advisor to Vivint Solar and Simpson Thacher & Bartlett LLP and Wilson Sonsini Goodrich & Rosati are serving as legal counsel.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

34. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

35. As set forth below, the Registration Statement omits material information.

36. First, the Registration Statement omits material information regarding the Company's and Sunrun's financial projections.

37. With respect to the Company's financial projections, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate total costs/total system costs, EBITDA, net cash flow, and levered cash flow/levered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

38. With respect to Sunrun's financial projections, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate total costs/total system costs, EBITDA, net cash flow, and levered cash flow/levered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

39. Also, with respect to the combined company's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate aggregate proceeds and aggregate costs; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

40. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

41. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisors, Morgan Stanley ("MS") and BofA Securities, Inc. ("BofA").

42. With respect to MS's Trading Comparables Analyses, the Registration Statement fails to disclose: (i) the net debt used in the analyses; and (ii) the number of fully diluted shares outstanding used in the analyses.

43. With respect to MS's Discounted Equity Research Analysts' Future Price Targets analyses, the Registration Statement fails to disclose: (i) the price targets observed in the analyses; and (ii) the sources thereof.

44. With respect to MS's Levered Discounted Cash Flow Analysis of Vivint, the Registration Statement fails to disclose: (i) the levered free cash flows used in the analysis and all underlying line items; (ii) unrestricted excess cash; (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.3% to 11.3%; (iv) the terminal values used in the analysis; (v) MS's basis for using an EBITDA trading multiple ranging from 12.0x to 16.0x; (vi) terminal year debt; and (vii) the number of fully diluted shares outstanding of Vivint.

45. With respect to MS's Levered Discounted Cash Flow Analysis of Sunrun, the Registration Statement fails to disclose: (i) the levered free cash flows used in the analysis and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates ranging from 9.4% to 11.4%; (iii) the terminal values used in the analysis; (iv) MS's basis for using an EBITDA trading multiple ranging from 12.0x to 16.0x; (v) the Sunrun debt used in the analysis; and (vi) the number of fully diluted shares outstanding of Sunrun common stock.

46. With respect to MS's Pro Forma Levered Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the levered free cash flows used in the analysis and all underlying line items; (ii) unrestricted excess cash; (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.3% to 11.3%; (iv) the terminal values used in the analysis; (v) MS's basis for using an EBITDA trading multiple ranging from 12.0x to 16.0x; (vi) the debt used in the analysis; and (vii) the assumed number of fully diluted shares outstanding of the pro forma combined company's common stock.

47. With respect to BofA's Discounted Cash Flow Analysis of Vivint, the Registration Statement fails to disclose: (i) the stand-alone, levered, after-tax free cash flows used in the analysis and all underlying line items; (ii) the terminal values used in the analysis; (iii) BofA's basis for applying a selected range of net retained value exit multiples of 0.5x to 0.9x; and (iv) the individual inputs and assumptions underlying the range of discount rates of 9.0% to 12.0%.

48. With respect to BofA's equity research analyst price targets analyses, the Registration Statement fails to disclose: (i) the price targets observed in the analyses; and (ii) the sources thereof.

49. With respect to BofA's Discounted Cash Flow Analysis of Sunrun, the Registration Statement fails to disclose: (i) the stand-alone, levered, after-tax free cash flows used in the analysis and all underlying line items; (ii) the terminal values used in the analysis; (iii) BofA's basis for applying a selected range of net retained value exit multiples of 1.1x to 1.5x; and (iv) the individual inputs and assumptions underlying the range of discount rates of 10.0% to 13.5%.

50. With respect to BofA's Has/Gets Analysis, the Registration Statement fails to disclose: (i) the synergies used in the analysis; (ii) the individual inputs and assumptions underlying the discount rate range of 10.00% to 13.50%; and (iii) the terminal values used in the

analysis.

51. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

52. Third, the Registration Statement omits material information regarding MS and BofA.

53. The Registration Statement fails to disclose the timing and nature of the past services MS provided to the parties to the Merger Agreement, their affiliates, and Blackstone.

54. The Registration Statement also fails to disclose whether BofA has performed past services for Sunrun or its affiliates, and if so, the timing and nature of such services and the amount of compensation BofA received for providing such services.

55. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

56. The omission of the above-referenced material information renders the Registration Statement false and misleading.

57. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Vivint**

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule

14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Vivint is liable as the issuer of these statements.

60. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

61. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

62. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

63. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

64. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

65. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and Sunrun**

66. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67. The Individual Defendants and Sunrun acted as controlling persons of Vivint within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or Board members of Vivint and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

68. Each of the Individual Defendants and Sunrun was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

69. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

70. Sunrun also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

71. By virtue of the foregoing, the Individual Defendants and Sunrun violated Section 20(a) of the 1934 Act.

72. As set forth above, the Individual Defendants and Sunrun had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

|  |  |
|---|---|
| Dated: August 24, 2020 | **RIGRODSKY & LONG, P.A.** |
|  | By: */s/ Gina M. Serra* |
|  | Brian D. Long (#4347) |
| **OF COUNSEL:** | Gina M. Serra (#5387) |
|  | 300 Delaware Avenue, Suite 210 |
| **RM LAW, P.C.** | Wilmington, DE 19801 |
| Richard A. Maniskas | Telephone: (302) 295-5310 |
| 1055 Westlakes Drive, Suite 300 | Facsimile: (302) 654-7530 |
| Berwyn, PA 19312 | Email: bdl@rl-legal.com |
| Telephone: (484) 324-6800 | Email: gms@rl-legal.com |
| Facsimile: (484) 631-1305 |  |
| Email: rm@maniskas.com | *Attorneys for Plaintiff* |